Reese, J.
delivered the opinion of the court.
If during coverture the husband, by deed purporting to convey the fee, alien the land of the wife, or land jointly owned by himself and wife, and the bargainee enter into pos *492 session, is the wife barred by the statute of limitations, unless within three years after the death of her husband, she commence her action; or is she barred only by'seven years adverse possession, after her discoverture?
It is admitted by those who insist upon the bar of three years, that neither the wife alone, nor the husband'and wife together, have, in the case stated, any right to enter or any cause of action during the coverture; and it is conceded, that if the deed of the husband had in the case before us, conveyed only the interest of the husband during the marriage, the wife would have been allowed seven years after his death in which to bring her suit. It is, then, the form of the husband’s deed, as purporting to convey a fee, which is supposed to produce the evidence. A deed, under our act of 1715, when registered, operating, it is said, to convey the estate, not under the statute of use, but by its own proper force as an ancient deed of feoffment, possesses thp efficacy ascribed to that assurance, and is therefore a disseizin of the wife, in the sense in which that term is used in the old common law books.
The legal existence of the wife, during marriage, being suspended, or the husband containing within himself the entire legal existence of both, the effect of the relation was, that if the husband by fine or feoffment alien the lands of the wife, owned by her in her own right, or jointly with him, she could not during the coverture enter, nor could she enter upon the death of the husband, but was put to her action cui in vita in the nature of a writ of right. Littleton, § 594.
But this discontinuance of the wife’s estate, produced by the fine or feoffment of the husband, was subsequently to the time of Littleton, altered by the statute of 32 Henry 8, by the purview of which statute, Lord Coke informs us, that the wife and her heirs, after the decease of her husband, may enter into the lands and tenements of the wife, notwithstanding the alienation of the husband, and this, as well in the case where the lands were jointly held by husband and wife, as when the fee belonged to the wife alone. Subsequently, therefore, to this statute, the wife and her heirs had twenty *493 years, after the death of the husband, in which to enter, or bring a possessory action, except in the single case of a fine levied by the husband with proclamations, when the wife must enter and avoid the estate of the conusee within five years after the death of the husband, or else she is barred forever by the statute of 4 H 7; for, says Lord Coke, the statute of 32 H. 8, “doth help the discontinuance, but not the barre; and the statute speaketh of a fine, and not of a fine with proclamations.” Com. of Coke, upon § 594, Liber, 3, cap. 11.
Subsequently, therefore, to the 32 Henry 8, the wife, with the single exception above stated, might after the death of the husband, within twenty years enter, or bring her pos-sessory action, and avoid the fine or feoffment of the husband made during the coverture; and of course, in this state, even if it were conceded that a deed of the husband made under the act of 1715, and registered, has the efficacy of the ancient deed of feofment before the statute H. 8, and would operate the disseizin and discontinuance of the wife’s estate, still, by virtue of that statute, the disseizin and discontinuance are avoided, and she may enter or bring her possessory action within seven years. For it will scarcely be contended by those, who ascribe to a deed, under our statute, the efficacy of the ancient deed of feoffment, that the statute of 32 H. 8, is not in force here, for the effect of that would be, as we have no writ of cui in vita, &e. or writ of right, that the husband’s deed would operate a disseizin and discontinuance of the wife’s estate, absolutely and forever. This simple view of the subject is clearly decisive of the case before us, and we might well terminate at this point, our consideration of the question.
2. But the efficacy ascribed in ancient times to a deed of feoffment was founded upon feudal principles which the courts in England now declare to have lost their operation, and to have no further existence, and they deny to a feoffment its ancient and dangerous efficacy.
In the great case of Taylor ex dem: Atkyns vs. Horde & others, 1 Bur. Rep. 60, which was much considered and decided, “with infinite ability,” as Mr. Butler admits, even *494 when in his own annotations upon Coke, he is impugning its conclusions, Lord Mansfield says, “that except the special case of fines with proclamations, which he observed, stands upon distinct grounds, and the construction of the statute, 4 H. 7, c 24, for the sake of the bar, he could not think of a case where the true owner, whose entry is not taken away, might not elect, by choosing a possessory remedy, to be deemed as not having been disseized.” Bur. 112. And the judges of the King’s Bench, in the opinion delivered by them in 1784, in the same case, express themselves still more strongly on this head. “They say, that “where the books speak of feoff-ments in fee by tenants for years, and that the fee simple passes thereby, it is to be understood of those feoffments of old, attended with livery, and actual transmutation of the possession from one man to another; that feoffments from having been the only conveyance of land for a long term of years, have languished into mere form, and are nothing now more than a common conveyance; that their grandeur and efficacy is lost; and that without actually transferring of the estate from one man to another, they mix with the community of all other assurancess that the name of these feoffments and the remembrance of them, remain and survive them however imperfectly, after the practice of making them, and consequently their solemnity is quite at an end.”
This decision not only did not meet the sanction, but received the severe criticism of Mr. Butler, Mr. Preston, and other property lawyers in England, who are wont to cast a long and lingering look towards the departing glory of the ancient learning, to the analysis of which they have devoted so much time, toil and talent. In this censure they are joined by Chief Justice Paksons, of our own country, whose professional character was strongly marked by their own sturdy features, who had drank deeply at the same fountain of ancient learning, and who, perhaps, largely participated in their feudal sympathies.
But notwithstanding the opposition of property lawyers in elimentary disquisitions and in discussions at the bar, the opinions of Lord Mansfield, and the judges of the King’s Bench in Taylor vs. Horde, have received the subsequent *495 confirmation of the English courts. In tho case of Jerrett vs. Weare & others, 3 Price 575, Exchequer Reports, argued by Mr. Puller and Mr. Preston, Graham, Baron, says, upon this question, that “a load of knowledge” had been brought forward in the argument, but the principle of the case of Taylor vs. Horde, rested upon grounds which were not to be shaken. And in the case of the Lessee of Maddock vs. Lynes, 3 Barn. & Cre. 306, Abbott, C. J. (since Lord Tenterden,) said, there was so much good sense in the doctrine laid down by Lord Mansfield, in the case of Taylor vs. Horde, that he should be sorry to find any ground for saying it could not be supported. Holroyd, J., said, “that the passages cited from Littleton & Coke, upon the general nature of disseizin are considered by Lord Mansfield to apply to disseisin by election.” He adds, “that the greatest mischief might arise if such conveyances were to operate against parties really interested.” And he remarks, “that the nature of a feoffment and disseizin are materially altered since the time when Littleton wrote;” and some of the judges in that case, which was decided so late as the year 1824, seemed to question the authority of the case of Taylor vs. Horde.
So that the conclusion of Chancellor Kent seems to be well founded, that the good sense and liberal views which dictated the decision in Taylor vs. Horde, seems to have finally prevailed in Westminster Hall, notwithstanding the strong opposition which that case met with from the profession. And he adds the sanction of his high authority to the principle of that decision, byremarking, “that the courts will no longer endure the old and exploded theory of disseizin. They now require something more than mere' feoffments and leases to work, in every case, the absolute and perilous consequences of a disseizin in fact.” 4 Kent’s Com. 475, first edit.; see also 10 John. Rep. Jackson vs. Sears, 435.
But if this controversy between the courts, struggling under the guidance of good sense and liberal principles, to escape from feudal shackles, and the property lawyers fondly and strongly clinging to them, had terminated, — or, being renewed, should hereafter terminate differently, we are, and will be, unaffected by the disastrous result.
*496 The object of our act of 1715, as it seems to us, waste abrogate and escape from the effects and consequences, as well as the forms and ceremonies of attornment, livery and seizin, &c. And if, as has been, we think, correctly determined, 2 Yer. R. 204, that though the title under, our statute does not, on the one hand, pass by operation of the statute of uses, but by deed registered, yet still, on the other hand, such deed does not like an ancient feoffment work a disseizin. To do this, the statute in question requires not only a deed, but seven years adverse possession under it.
On every ground, therefore, we think, that judgment should, be given for the plaintiff in error.
Let the judgment of the circuit court be reversed, and a new trial be had in the case, when the law will be charged in conformity to this opinion.